MATTS HOLMAN v. ERNEST A. KEMPE and Another.[1]

December 10, 1897.

Nos. 10,708—(133).

**Negligence—Injury to Employee—Evidence.**
> Evidence *held* to support the verdict.

**Same—Duty of Servant to Ascertain Dangers.**
> It is not the absolute duty of the servant, upon entering upon his work, to ascertain the dangers and risks connected therewith. The measure of his duty is ordinary care.

**Same—Carlson v. Northwestern, 63 Minn. 428, Followed—Foreman a Vice Principal.**
> *Held*, following Carlson v. Northwestern, 63 Minn. 428, that the trial court did not err in its instructions as to when a foreman in charge of work will be regarded as a vice principal.

**Same—Rulings of Court—Evidence.**
> Certain rulings on the trial as to the admission of evidence *held* to be correct.

Action in the district court for St. Louis county to recover $30,000 for personal injuries suffered by plaintiff. The defendant, Nils Ellsberg, having died after the action was begun, his executors were substituted as defendants. At the close of the trial the defendants requested that the following instructions (among others) be given to the jury:

2. It is the duty of the servant, on entering upon his service, to ascertain what he is expected to do and the dangers directly connected therewith. It is his duty to exercise care to avoid injury to himself. He is under as great obligation to provide for his own safety from such dangers as are known to him, or which may be known by ordinary care on his part, as the employer is to provide for him.

3. The employee must take ordinary care to learn dangers which are likely to beset him in the service. He must not go blindly to his work where there is danger. He must inform himself, and failure to do so where the danger can be ascertained, is negligence.

4. If the servant is a beginner and engages in dangerous work he must improve every opportunity to learn of his duties and their

[1] Reported in 73 N. W. 186.

accompanying danger, and if he fails to do so he is guilty of negligence.

10. If the jury find that plaintiff was cautioned not to be in too big a hurry in putting in the powder after he had squibbed the hole, he was bound to pay attention to the caution, and if he failed to do so and was injured by reason of such failure, he cannot recover.

11. If the jury find that plaintiff was cautioned that same morning about putting powder in the hole while it might be hot, the boss had a right to assume that he would pay some attention to the caution, and was not bound to stay there and watch him to see that he did not hurt himself.

Each of these requests was refused, and to each refusal defendants excepted. The jury returned a verdict for $2,000 in favor of plaintiff. From an order, Ensign, J., denying defendants' motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Draper, Davis & Hollister,* for appellants.

Plaintiff assumed the risk of doing what he did, as the danger was known to him. Quick v. Minnesota, 47 Minn. 361; Fleming v. St. Paul, 27 Minn. 111; Hughes v. Winona, 27 Minn. 137; Walsh v. St. Paul, 27 Minn. 367; Olson v. McMullen, 34 Minn. 94; Pederson v. City, 41 Minn. 289. It is the nature of the act, in the doing of which it is alleged the negligence occurs, that determines whether the person is a fellow servant or a vice principal. Lindvall v. Woods, 41 Minn. 212; Corneilson v. Eastern, 50 Minn. 23; Ling v. St. Paul, 50 Minn. 160; Fraser v. Red River, 45 Minn. 235; Fraker v. St. Paul, 32 Minn. 54; Brown v. Minneapolis, 31 Minn. 553. It is the duty of the servant, on entering upon his service to ascertain what he is expected to do and the dangers directly connected therewith. Bailey, Mast. Liab. (1st Ed.) 158; Swoboda v. Ward, 40 Mich. 420, 424. If the servant is a beginner and engages in dangerous work he must improve every opportunity to learn his duties and their danger. If he fails to do so it is negligence in him. Bailey, Mast. Liab. 161, 162; Hathaway v. Michigan, 51 Mich. 259; Mad River v. Barber, 5 Oh. St. 541; 2 Thompson, Neg. 1052. A new trial will be directed unless it appears beyond doubt that the error complained of did not and could not have prejudiced the rights of the parties. Vicksburg v. O'Brien, 119 U. S. 99; Smiths v. Shoe-

maker, 17 Wall. 630; Deery v. Cray, 5 Wall. 795; Moores v. National, 104 U. S. 625; Hoberg v. State, 3 Minn. 181 (262); Koehler v. Cleary, 23 Minn. 325.

*John Jenswold, Jr.*, for respondent.

It is not the mere rank or grade of the superior employee, but the nature of the duty or service which he performs, which determines whether he is a vice principal, and where such employee has been given control of the work and of all the workmen engaged in it, with absolute and supreme authority to give them orders how to do the work and where to work, in giving these orders, which the workmen are bound to obey, he represents the master and is performing a duty which would have devolved upon the master if personally present. Union Pacific v. Jarvi, 53 Fed. 65; Haas v. Balch, 56 Fed. 984; Burke v. Anderson, 69 Fed. 814; Mather v. Rillston, 156 U. S. 391; Myhan v. Louisiana (La.) 7 L. R. A. 172; Pittsburgh v. Shields, 47 Oh. St. 387; Greenberg v. Whitcomb, 90 Wis. 225; Strahlendorf v. Rosenthal, 30 Wis. 674; Parkhurst v. Johnson, 50 Mich. 70; Smith v. Peninsular, 60 Mich. 501; Coombs v. New Bedford, 102 Mass. 572, 585; Blomquist v. Chicago, 60 Minn. 426; Carlson v. Northwestern, 63 Minn. 428; Abel v. Butler–Ryan, 66 Minn. 16; Johnson v. Minneapolis, 67 Minn. 141.

Where a request though refused is fairly covered by the charge, the exception should direct the attention of the court to such part of the refused request affected by the alleged error. Delude v. St. Paul, 55 Minn. 63. Where a request is technically correct and might well have been given, the giving by the court of substantially the same request in its own language is no error. Dallemand v. Janney, 51 Minn. 514; Union Pacific v. Jarvi, supra. Where an instruction which is refused is plainly covered by the general charge there is no error. Barbo v. Bassett, 35 Minn. 485; Columbia v. National, 52 Minn. 224.

The servant has a right to presume, when directed to work in a particular place, that the master has performed his duty, and to proceed with his work in reliance upon this presumption, unless a reasonably prudent and intelligent man in the performance of his work would have learned facts from which he would have appre-

hended danger to himself.   Union Pacific v. Jarvi, supra; Russell v. Reed, 32 Minn. 45; Cook v. St. Paul, 34 Minn. 45; Steen v. St. Paul, 37 Minn. 310; Hungerford v. Chicago, 41 Minn. 444; Wuotilla v. Duluth, 37 Minn. 153.   In the matter of inspection the servant is bound to use ordinary care only.   Bergquist v. Chandler, 49 Minn. 511; Daly v. Sang, 91 Wis. 336; Madden v. Minneapolis, 32 Minn. 303; Robel v. Chicago, 35 Minn. 84; MacDonald v. Chicago, 41 Minn. 439; Corbin v. Winona, 64 Minn. 185; Engstrom v. Ashland, 87 Wis. 166; American v. Foust, 12 Ind. App. 421; Scharenbroich v. St. Cloud, 59 Minn. 116; Kelly v. Southern, 28 Minn. 98; Union Pacific v. Jarvi, supra; Cook v. St. Paul, supra; Myhan v. Louisiana, supra; Carlson v. Northwestern, supra; Abel v. Butler-Ryan, supra; Bonnet v. Galveston, 89 Tex. 72; Olmscheid v. Nelson-Tenney, 66 Minn. 61; Haas v. Balch, 56 Fed. 984; Johnson v. St. Paul, 43 Minn. 53; Hawkins v. Sauby, 48 Minn. 69; Anderson v. Liljengren, 50 Minn. 3.

The question in all cases on appeal is not whether some technical error may not have crept into the instructions as a whole, but whether it is apparent that the law was presented fairly and correctly to the jury.   Northern Pacific v. Cannon, 54 Fed. 252; Rowe v. Matthews, 18 Fed. 132; Parshall v. Minneapolis, 35 Fed. 649.

START, C. J.

The plaintiff, while in the employ of the appellants' testate, hereinafter referred to as the defendant, was injured by an explosion of blasting powder, which resulted in the loss of an eye and other permanent bodily injuries.   He brought this action to recover damages on account of such injuries on the ground of the negligence of his employer, and obtained a verdict for $2,000.   The appellants appealed from an order denying their motion for judgment notwithstanding the verdict and their alternative motion for a new trial.

1. The assignments of error 1 and 2 raise the question whether the evidence is sufficient to support the verdict.

The defendant was engaged in grading a roadbed for a siding of the Duluth & Iron Range Railroad.   The ground was frozen, and was loosened with dynamite and black powder.   The plaintiff

claims—and there was evidence tending to support the claim—that on the day of his injury he was at work for the defendant upon such grading as a driller, that is, in making the holes in the frozen earth wherein explosives were to be placed; that it was the duty of the blasters to squib or enlarge the hole by exploding dynamite at the bottom thereof, and afterwards load the hole with blasting powder, and fire the same; that this work of the blasters was dangerous, that its dangers were latent and unknown to the plaintiff, and that he was ignorant of the proper and safe way of squibbing, loading and firing the holes, and that the defendant, by his foreman, John Wickstrom, negligently ordered him from his work as a driller to do this work of the blasters, without informing him of the dangers and risks incident thereto, whereby he was injured while loading one of the holes.

The defendant admitted that the work of blasting was dangerous, but claimed that the dangers to which the plaintiff was exposed were open and apparent; that he assumed them, and his injury resulted from his own carelessness. These issues were clearly and correctly submitted to the jury by the trial court.

The evidence is sufficient to sustain a finding as to the negligence of the defendant's foreman in ordering the plaintiff to the work of blasting without advising him of its dangers, but upon the question of his contributory negligence it is less satisfactory. The evidence tends to show that the holes were loaded with from one to one and a half kegs of blasting powder, and as the plaintiff was pouring the powder into one of the holes the powder raised up, which indicated, as we understand it, that the pocket at the bottom of the hole had not been made large enough; that he called the attention of the foreman to this, who directed him to get dynamite and give the hole "a shake,"—that is, make the pocket larger by exploding the dynamite; that he did this, and commenced to load, when the same thing again occurred, which he reported to the foreman, who directed him to get dynamite, and give it another "shake"; that he did so, and then walked 15 or 20 feet, got a keg of powder, waited a minute or some such time, and then commenced pouring the powder into the hole, when it exploded by reason of the hole be-

coming hot, or possibly from a piece of burning fuse remaining therein.

The foreman testified that after the plaintiff had squibbed a hole the latter started to pour powder into it, and he told him to be careful, that the hole might be hot, and not to pour powder "so quick," and then he waited four or five minutes, and resumed the work of loading. This was while he was at work on a hole other than the one at which he was hurt, and about 15 minutes before he was injured.

This evidence was practically uncontradicted, and, if it were all of the evidence upon the question of the plaintiff's contributory negligence, it would be substantially conclusive against him. But there was other evidence in the case tending to show that after a hole had been squibbed it was dangerous to load it with powder for 30 or 40 minutes thereafter, on account of the hole being heated, and possibly from burning pieces of fuse used to explode the dynamite, although the fuse is ordinarily thrown out by the explosion; that without an actual test to ascertain whether the hole is hot or not after it has been squibbed it is a matter of speculation whether it is safe to load it with powder. This test is made by putting the loading rod down into the hole, and, after pulling it out, feel of it to see if it is warm.

There was also evidence in the case tending to show that the plaintiff was ignorant as to all these matters, and especially, as to how long it was necessary to wait after a hole was squibbed before loading it, and that he received no instructions or warning save the caution by the foreman stated; and further, that the foreman was an experienced blaster, whose business it was to see that the holes were properly squibbed and loaded, and that he saw the plaintiff when he commenced to pour the powder in the last time, but walked away before the explosion.

Upon the whole evidence it was a question for the jury whether the caution of the foreman was sufficient, and whether the plaintiff appreciated the dangers, assumed the risks, and was guilty of contributory negligence. The question whether the foreman was a vice principal in ordering the plaintiff from his work as a driller

to that of a blaster will be considered with the eighth assignment of error.

2. The refusal of the court to give the defendant's request for instructions Nos. 2, 3, 4, 10, and 11 is the basis of assignments of error 3 to 7, inclusive.

The first three were properly refused, for the reason that none of them, taken as a whole, was a correct statement of the law. The first proposition in No. 2 makes it the absolute duty of the servant upon entering upon his service to ascertain the dangers connected therewith. The last sentence of No. 3 makes his failure to inform himself of the danger connected with his work, where it can be ascertained, negligence as a matter of law, and No. 4 declares it to be negligence if he fails to improve every opportunity to learn his duties and their dangers. The servant's duty in these several particulars is not absolute, but it is to exercise ordinary care. Requests 10 and 11 were inaccurate, and liable to mislead, for each assumes that the caution of the foreman, if given, was, as a matter of law, a full discharge of the defendant's duty to inform the plaintiff of the dangers incident to that work. But, this aside, the trial court in its general charge fully and correctly instructed the jury as to the effect upon the plaintiff's right to recover the caution, if given, would have. It was not error to refuse the requests.

3. The eighth assignment of error is the giving of the following instruction:

"If you find from the evidence that the foreman, John Wickstrom, was, during the plaintiff's work, the supreme authority present, and that all the men engaged in the work in the so-called 'cut' were subject to his orders in every particular, and that no one present had any higher authority over them,—if he had the right to direct them what to do and where to work, and how to do it,—then I charge you that he was a vice principal, and that for any negligence on his part in directing plaintiff to work at the squibbing or loading in question the defendant is liable."

The defendant simply excepted in general terms to the giving of this instruction. The first objection made to it is that it submitted to the jury the question whether the foreman, Wickstrom, was the supreme authority present, with entire control of the work

and of giving orders to the workmen, when in fact the evidence is conclusive that he was not, but that the walking superintendent or boss was; or, in other words, that the evidence did not justify the instruction. Waiving the point that the exception was not sufficient to call the attention of the trial court to this particular objection, we are of the opinion that the evidence was amply sufficient to justify the submission of the question to the jury. The second reason urged why it was error to give the instruction is that it did not submit to the jury the proper test as to whether or not Wickstrom was a vice principal, in that the test given was simply whether he had a right to direct the men under him where and how to work. Conceding, without so deciding, that, if the test were to be given as an abstract proposition, it would not be sufficient, because it did not contain all of the elements of vice principalship, yet the fact remains that it was not so given; on the contrary, the instruction was expressly applied to the order of the foreman to the plaintiff to work at the squibbing and loading in question,— a work admittedly dangerous, and of the risks and dangers of which the evidence tends to show the plaintiff was ignorant.

The work of blasting, as shown by the uncontradicted evidence, is of such a character that ordinary care required the giving of reasonable orders and instructions to inexperienced workmen in its execution, so as to protect them from the dangers thereof so far as that result could be secured by the exercise of ordinary care. This was the absolute duty of the defendant, and, if he delegated the entire control of the work to the foreman, with unrestricted authority to direct the men to do this work, and how to do it, he was a vice principal in the discharge of the duty so delegated to him, for whose negligence, if any there were, in directing the plaintiff to work at blasting, this defendant is liable. The instruction, taken as a whole, was a correct statement of the law as applied to this particular case. Blomquist v. Chicago, 60 Minn. 426, 62 N. W. 818; Carlson v. Northwestern, 63 Minn. 428, 65 N. W. 914; Abel v. Butler-Ryan, 66 Minn. 16, 68 N. W. 205.

4. The remaining assignments of error relate to rulings on the trial as to the admission of evidence. We have considered each of the alleged errors, and have reached the conclusion that no re-

versible error was committed by the court in making the rulings complained of. But two of them merit special mention.

The plaintiff was asked if he did not drink a good deal before the accident, and if, just before the time he went to work for the defendant, he had not been off on a drunk. An answer to these questions was excluded, and a general exception taken. The appellants claim here for the first time that the evidence sought to be elicited was material to explain in part plaintiff's physical condition at the time of the trial. If such was the real purpose of the evidence, it was not apparent upon the record, and the trial court's attention should have been specifically called to the object of the evidence.

Two witnesses other than the foreman were asked if they saw anything about the plaintiff's work that indicated that he was a man of less than ordinary intelligence. An objection to the question was sustained. It may have been material to show that the foreman did not see anything about the plaintiff or his work indicating that he was not a man of ordinary intelligence, as bearing on the question of the foreman's negligence; but the foreman and one other witness were permitted to testify fully upon the subject without objection, and no claim to the contrary was made on the trial. The exclusion of an answer to the questions was clearly not prejudicial, and was not reversible error, if any.

Order affirmed.

CANTY, J.

I concur in all of the foregoing opinion except that part of it which disposes of the eighth assignment of error. It was, in my opinion, error to give the instruction assailed by this assignment of error. The court charged the jury that, if the foreman had supreme control, he was a vice principal.

This is the doctrine of "departmental control," which the federal courts have lately adopted,—a doctrine which is in many cases impracticable, arbitrary and unjust. Impracticable, because it is impossible in a large number of cases to define what a department is, or to find a dividing line between what is and what is not a department; arbitrary and unjust, because the controlling principle is not

one which should control, and results in injustice in many cases to the inferior servant, who cannot recover damages for his injury when he should be allowed to do so. The rule also discriminates against small enterprises in which the master can have but one superintendent or foreman, who is in immediate charge of the inferior servants, and discriminates in favor of large enterprises where there are several superintendents or foremen, one above the other, in what the court is pleased to call but one department.

The foreman in immediate charge of the inferior servants is held, in the latter case, to be a mere fellow servant with those under him, while in the former case he is held to be a vice principal. Therefore, in the former case the responsibility of the master is very great, while in the latter it is, as a general rule, merely nominal, because, as a general rule, no one of these superintendents of different rank interferes with such inferior servants except the one who is in immediate charge of them, and, as before stated, he is held to be merely a fellow servant for whose acts and omissions the master is not liable. In one instance the character of the work may be such that there may be ten thousand men working in one department, with a dozen superintendents or foremen, one ranking above the other; while in another instance the character of the work may be such that every two or three men may constitute a department, and the foreman in immediate charge of them may have supreme control. A rule which thus offers immunity to large concerns and imposes extraordinary liability on small concerns should not be tolerated.

Whether or not, in the case at bar, the foreman had supreme control is, in my opinion, immaterial; and, if that part of the test of whether he is a vice principal is rejected, the part of the charge in question amounts to an assertion that the foreman is a vice principal merely by reason of the fact that he is a foreman having the right to direct the other servants "what to do and where to work and how to do it."

The court did not make the facts that plaintiff was inexperienced in this kind of work, and that the foreman knew it, or should have known it (if such were the facts), any element in determining wheth-

er or not the foreman was a vice principal. As I have often stated in this class of cases, the question of whether or not the foreman is a vice principal should depend on whether or not, in the particular instance, substantial disparity existed between him and the inferior servant injured,—on whether or not the foreman had, or should have had, knowledge or skill which the inferior servant injured neither had nor could be expected to have, and that he was injured by reason of his want of such knowledge or skill. Ordinarily the question of whether or not such disparity existed is, under proper instructions, one of fact for the jury. It was such in this case. The foreman testified that, before he put plaintiff to work blasting, plaintiff stated to the witness, in substance, that he understood the work. The witness testified as follows:

"Q. What did he tell you? A. He told me he could. He understood all about the powder. Q. Did he tell you where he had worked? A. He told me he worked for Pete Erickson, and helped him in loading, blasting, and drilling."

If the jury believed this testimony, they might have found that the foreman had a right to suppose that plaintiff had sufficient knowledge and skill to take care of himself, and therefore, as regards the particular danger by reason of which he was injured, the foreman was not a vice principal. In the majority opinion, it is held as a question of law that on the facts in this case the foreman was a vice principal. The only undisputed fact on which the court can stand in taking this position is that the work was inherently of a dangerous character. True, the opinion couples with this fact the ignorance of the plaintiff; but, as I have shown, the proof is not conclusive either that plaintiff was ignorant or inexperienced, or that the foreman had any good reason to suppose that he was. The majority concede this, and state, "A work admittedly dangerous, and of the risks and dangers of which the evidence tends to show the plaintiff was ignorant." Surely, the majority should not be guilty of holding that the trial court in its charge had a right to assume absolutely and unconditionally the existence of disputed facts.

The jury were warranted in finding that plaintiff was experi-

enced, but was reckless and knew better than to do what he did, and also that the foreman had good reason to believe that plaintiff was experienced. But, in spite of this, the majority hold as a question of law that the foreman was a vice principal. Then the only consistent deduction that can be drawn from the position of the majority is that the mere fact that the work was of a dangerous character constituted the foreman a vice principal, whether or not it was in his power to render it any the less dangerous. I cannot concede that such is the law, but, on the contrary, am of the opinion that whether or not the foreman was a vice principal was a question of fact for the jury, and depended on whether or not plaintiff was inexperienced and whether or not the foreman had good reason to suppose that he was; in other words, depended on the amount of disparity between the foreman and the plaintiff. I am therefore of the opinion that the court erred in its charge, and that a new trial should be granted.