## DAVID HARTIKKA v. D. G. CUTLER COMPANY.[1]

May 3, 1912.

Nos. 17,470—(59).

**Grant of new trial — review on appeal.**

Where the trial court grants a new trial on the ground that its instructions to the jury were misleading and prejudicial to the moving party, the order will be reversed only when it appears that the conclusion of the trial court was clearly without substantial foundation.

**Questions for the jury.**

The questions of defendant's negligence, decedent's contributory negligence and assumption of risk *held*, on the evidence, questions of fact for the jury.

Action in the district court for St. Louis county by the administrator of the estate of Matti Karilainen, deceased, to recover $5,000 for the death of his intestate. At the close of the testimony defendant moved for a directed verdict. The court denied the motion. The case was tried before Cant, J., and a jury which returned a verdict in favor of defendant. From an order granting plaintiff's motion for a new trial, defendant appealed. Affirmed.

*Spencer & Marshall,* for appellant.

*O. J. Larson, M. E. Louisell* and *John Saari,* for respondent.

[1] Reported in 135 N. W. 1005.

BROWN, J.

Action for personal injuries, in which defendant had a verdict and appealed from an order granting a new trial.

Defendant is a corporation engaged in the business of dealing in salt, lime, cement, and building material at Duluth, this state. It owns and operates a large warehouse in which are stored articles kept for sale, and from which shipments are made. The warehouse is connected with the Northern Pacific Railway tracks by a spur running therefrom to the warehouse, over which cars are moved to the warehouse to be loaded and unloaded. The warehouse is on lower ground than the railroad tracks, and there is a grade of one and one-half feet to the hundred leading to the warehouse. The spur track is owned or exclusively controlled by defendant. It was customary for the railway company to switch cars onto the spur track whenever ordered by defendant, which, to prevent running down the grade, were either blocked, or the brakes set, some distance from the warehouse. Usually a string of three or more cars were so placed on the spur track at a time. Prior to the day of the accident here complained of a string of three cars had been placed on the spur track, and they were blocked, by placing a piece of wood in front or setting the brakes of the leading car, and by this means held stationary.

It became necessary to take one of these cars to the warehouse to be loaded with material to be shipped out, and defendant's general foreman undertook, with a crew of other employees, including decedent, to remove it. The foreman had entire supervision and control of the matter, with power and authority to direct and control the other employees. It had been the custom, when a car was so to be taken to the warehouse, to uncouple it from others to which it might be attached, remove the block in front of the wheels, or release the brakes, as the case might be, secure the remaining cars to prevent running down the grade, then by means of a pinch bar start the released car in motion, and with the assistance of the men pushing it down to the warehouse. The track was uneven below where the cars were stationed on this occasion, and the pushing of the men was necessary to the movement of the car over the uneven places in the track.

The car was released on this occasion, started in motion, and decedent and other employees were directed by the foreman to push it to the warehouse. Decedent took a position at the rear end of the car, immediately in front of the drawbar, with fellow employees on either side, and was complying with the orders given him, when, without notice or warning of any kind, the cars remaining started down the grade, colliding with the one being moved to the warehouse, and crushing and injuring decedent so severely that he subsequently died. The reason for the movement of the remaining cars was clearly shown to have been the failure properly to block the wheels thereof or set the brakes after the removal of the car being taken to the warehouse.

The complaint sufficiently alleged negligence on the part of defendant to justify a recovery, if sustained by the evidence. The defense was that decedent was guilty of contributory negligence, assumed the risks, and that whatever negligence the evidence disclosed was that of a fellow servant, for which defendant was not responsible.

The court charged the jury in part as follows:

"At the time of receiving the injuries which caused his death, the deceased was in the employ of the defendant. He was engaged with other workmen in pushing a railway car along a track in the vicinity of defendant's warehouse. While so engaged, a car in the rear, upon the same track, from some cause moved forward, collided with the car which the deceased was pushing, and crushed him between the two cars in such manner as shortly to cause his death. That alone would not entitle his administrator to recover in this action. There might be no more right of recovery against the defendant under such circumstances than against one of you."

On the motion for a new trial the learned trial court was of opinion that the latter part of this instruction was erroneous, at least misleading and prejudicial to plaintiff, and for that reason granted the new trial. If the trial court intended by this instruction to say to the jury that the happening of the accident—that is, the fact that the remaining cars for some reason unexplained started in motion and

ran down the grade, colliding with the other car—was no evidence of negligence, the court was in error.

The case of Olson v. Great Northern Ry. Co. 68 Minn. 155, 71 N. W. 5, in its substantial facts, is similar to the case at bar, and it was there held that the unexplained movement of the cars left standing was prima facie evidence of negligence. The doctrine of that case has been followed and applied in subsequent decisions. 4 Notes to Minn. Cases, 244.

The trial court was of opinion that the jury was misled by this instruction, resulting in prejudice to plaintiff; and though the question is not free from doubt, in view of subsequent portions of the charge, which are exceedingly clear, we are not disposed, in view of the rule guiding us in cases of this kind, to disturb the action of the trial court. Much must be left to the sound judgment of that court upon questions of this character, and a reversal will be ordered only when it appears that the conclusion of prejudice made the basis of the new trial was clearly without reasonable or substantial foundation. Demueles v. St. Paul & N. P. Ry. Co. 44 Minn. 436, 46 N. W. 912. If the trial court had denied a new trial, it is doubtful whether a reversal would have been ordered on this particular point. But we give force to the advantageous position of the trial court in determining the question of prejudice, and sustain the order.

In view of a new trial, it is deemed inadvisable to enter into a discussion of the evidence. We need only say that, within the doctrine laid down, and frequently applied, in numerous of our decisions, the evidence presented questions of fact upon defendant's responsibility, as well as upon the question of decedent's alleged contributory negligence and assumption of risk. Barrett v. Reardon, 95 Minn. 425, 428, 104 N. W. 309; Cody v. Longyear, 103 Minn. 116, 114 N. W. 735; Lohman v. Swift & Co. 105 Minn. 149, 117 N. W. 418; Tendall v. Great Northern Ry. Co. 113 Minn. 474, 130 N. W. 22.

Order affirmed.